NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR CINTRON, | |
| Plaintiff, | Civil Action No. 10-cv-00961 (SDW) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Defendant. | November 28, 2011 |

**WIGENTON**, District Judge.

This action comes before the Court as the result of an accident that took place on March 21, 2009 involving plaintiff Victor Cintron ("Plaintiff"), and an employee of the defendant, the United States of America ("Defendant" or "Government"), Wendy Morales ("Morales") in West New York, New Jersey.

The Court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) (2006) and 28 U.S.C. § 2679(a) (2006).

Plaintiff alleges Defendant's employee negligently and proximately caused Plaintiff's injuries. The Federal Tort Claims Act provides a remedy for injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." § 1346(b)(1); *see also* 28 U.S.C. § 2671 (2006). As the law of the place of the incident is applied, this case is governed by New Jersey law. *See generally Kieffer v. Blue Seal Chem. Co.*, 196 F.2d 614, 615 (3d Cir. 1952); *Fu v. Fu*, 733 A.2d 1133, 1142 (N.J. 1999).

1

A three-day bench trial was held before this Court from October 11, 2011 until October 13, 2011. Based on the testimony and evidence presented at trial, this opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

For the reasons stated below, the Court finds for Plaintiff and **DENIES** Defendant's Federal Rule of Civil Procedure 52(c) motion.

**FINDING OF FACTS**

On March 21, 2009, at approximately 3:30 p.m., Plaintiff purchased and sipped on a beer at Timmy's Tavern, located on Park Avenue in West New York, New Jersey. (*See* Transcript of Victor Cintron, October 11, 2011 ("Cintron Tr. 10/11/11") 12:3–4, 13:10–13, 14:9–11; *see also* Transcript of Victor Cintron, October 12, 2011 ("Cintron Tr. 10/12/11") 1:21–24.)[1] He then went to a bodega across the street to purchase snacks. (Cintron Tr. 10/11/11 14:4-16.)

When Plaintiff exited the bodega, he was a pedestrian standing at the intersection of Park Avenue and 67th Street. (Stipulated Facts, Final Pretrial Order, 8/15/11 ("Stipulated Facts") ¶ 1.) Plaintiff entered the crosswalk to return to Timmy's Tavern. (Cintron Tr. 10/11/11 21:9–12.) During this time, a United States Postal Service ("USPS" or "Postal Service") van was on the far side of 67th Street. Morales was the driver of the Postal Service van headed east on 67th Street. (Stipulated Facts ¶ 2.) She made a left-hand turn onto Park Avenue, heading north. (*Id.*) As the Postal Service van was turning, the side view mirror on the van struck Plaintiff on his left shoulder. (Cintron Tr. 10/12/11 8:3–18.) Plaintiff did not fall to the ground. (*Id.* 8:16–9:14.)

---

[1] Citations to transcripts herein are to the rough transcripts available as of the date of this opinion that accurately reflect the testimony provided.

Shortly thereafter, a police officer arrived at the scene, investigated, and gave Plaintiff a summons for jaywalking that was later dismissed. (*Id.* 11:11–12.)

Plaintiff refused to go to the hospital at the time of the accident. (*Id.* 9:19–10:9.)

On March 23, 2009, Plaintiff went to Bergenline Healthcare where he received chiropractic care for six months. (*Id.* 24:9–12.) Plaintiff then received chiropractic treatments from Dr. Schwartz of Hudson East Pain Management until December of 2009. (*Id.* 25:5–21.) Plaintiff did not receive treatment from an orthopedic surgeon and no clinician recommended surgery to him. (*Id.* 24:9–26:2, 26:7–8.)

Subsequent to the accident, Plaintiff missed two days of work. (*Id.* 23:6–22.) Plaintiff continued to work full time, but his job responsibilities were somewhat modified. (Cintron Tr. 10/11/11 49:3–50:11.)

On or about April 27, 2009, a Standard Form 95 Claim for Damage, Injury or Death was presented to the Postal Service on behalf of Plaintiff. (Stipulated Facts ¶ 3.) The Postal Service denied the claim by letter, dated October 23, 2009. (*Id.*)

All medical bills incurred by Plaintiff were paid by the New Jersey Property & Liability Guaranty Association. (*Id.* ¶ 7.)

Prior to the March 21, 2009 accident, Plaintiff had pre-existing injuries, including injuries to parts of his neck and back, as well as pre-existing headaches. (Certified Records of Lloyd Bennet, Esq., Ex. G to Defendant's Exhibits ("Gov't Ex. G"), at 8, 30-31, 38, 44-49, 54; *see also* Cintron Tr. 10/11/11 7:13–19, 8:1–17.)

Plaintiff was born on January 17, 1970. (Stipulated Facts ¶ 4.) At the time of the trial, Plaintiff was 41 years old.

At the time of the accident Plaintiff did not own a car or reside with a family member who owned a car pursuant to N.J.S.A. 39:6A-8.[2]

**CONCLUSIONS OF LAW**

"In New Jersey, the question of whether a duty is owed by a defendant is one of law, to be determined by the court." *Rustay v. Consol. Rail Corp.*, 775 F. Supp. 161, 163 (D.N.J. 1991). The defendant's breach of duty is a question of fact for which the plaintiff bears the burden of proving that the defendant's negligence was the proximate cause of the plaintiff's injury. *Id.*; *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990); *see also Catto v. Schnepp*, 298 A.2d 74, 76 (N.J. Super. Ct. App. Div. 1972). The plaintiff must prove by a preponderance of the evidence that the defendant breached its duty. *Onufer v. Seven Springs Farm, Inc.*, 646 F.2d 46, 47 (3d Cir. 1980). The plaintiff must establish defendant's liability and damages. *Rustay*, 775 F. Supp. at 163.

New Jersey law provides that "[i]n the event of a collision between a vehicle and a pedestrian within a marked crosswalk, or at an unmarked crosswalk at an intersection, there shall be a permissive inference that the driver did not exercise due care for the safety of the pedestrian." N.J.S.A. 39:4-32(h).[3] However, "[e]very pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." N.J.S.A. § 39:4-32(f); *see also* N.J.S.A. § 39:4-33; *Abad v. Gagliardi*, 876 A.2d 331, 332–33 (N.J. Super. Ct. App. Div. 2005).[4]

---

[2] Plaintiff is not required to prove permanent injury to prevail in this action. *See Haywood v. Harris*, 997 A.2d 1098, 1107 (N.J. Super. Ct. App. Div. 2010).

[3] Plaintiff claims Morales violated N.J.S.A. § 39:4-35 and N.J.S.A. § 39:4-36 by failing to yield to a pedestrian in the crosswalk. However, N.J.S.A. § 39:4-35 has been repealed and similar provisions were incorporated into the amendment of N.J.S.A. § 39:4-32.

[4] These sections appear to be an effort to prevent "jaywalking," by requiring pedestrians to cross at crosswalks where possible.

Notably, N.J.S.A. § 39:4-32(g) also contains the provision that "[n]othing contained herein shall relieve a driver from the duty to exercise due care for the safety of any pedestrian upon a roadway. Nothing herein shall relieve a pedestrian from using due care for his safety." Thus, in the instant matter, even if Plaintiff was only near or by the crosswalk, or on or by the median, Defendant had a duty to exercise due care.

The record indicates that Morales did not see Plaintiff at any point before or immediately after she hit Plaintiff. (Deposition of Wendy Morales, 1/11/2011 ("Morales Dep.") 60:11–19, 63:24–64:10.) The testimony is unclear as to whether Morales was talking on the phone at the time of the accident. (*Id.* 56:18–57:13.) Morales had a green light when she was turning and the Postal Service van was likely going between five and fifteen miles per hour at the time of the accident. (*Id.* 60:9–10; *see also* Def.'s Br. at 2.)

It is unclear whether Plaintiff was actually in the crosswalk at the time of the accident. As noted, Morales did not see Plaintiff prior to the accident and Plaintiff's own testimony indicates that at the time Plaintiff was struck, he was standing by or very close to the crosswalk, on or by the median. (*See* Cintron Tr. 10/11/11 22:2–6, Cintron Tr. 10/12/11 13:24–14:9.) However, even assuming *arguendo* that Plaintiff was standing a few feet from the crosswalk, on the median, Defendant had a duty of care and breached its duty to Plaintiff. Defendant has failed to prove that Plaintiff was comparatively negligent. This Court finds that Defendant is liable for Plaintiff's injuries that were directly caused as a result of the accident.

Plaintiff alleges that as a result of the accident on March 21, 2009, Plaintiff suffered injuries, including the following:

> cervical spine disc herniation C6-C7; cervical spine disc bulge C3-C4, C4-C5 and C5-C6, cervicobrachia syndrome, cervicocranial syndrome; thoracic spine sprain/strain; lumbalgia; contusions of

5

> the right shoulder; rotator cuff syndrome; acute lumbosacral sprain/strain, acute L5-S1 lumbosacral disc bulge with superimposed broad based central and left central disc herniation seen abutting the S1 nerve root on the left, acute sciatic radiculopathy; acute stress adjustment disorder with mixed disturbances of emotions and conduct.

(Plaintiff's Contested Facts, Final Pretrial Order ¶ 8.)  Specifically, at trial, Plaintiff's counsel articulated that the alleged pain arising from a C6-C7 disc herniation and L5/S1, C7 radiculopathy and S1 radiculopathy are the focus of Plaintiff's claims.  (Cintron Tr. 10/12/11 35:1–3.)

At the time Plaintiff went to Bergenline Healthcare in 2009, Plaintiff said that his injuries were to his left shoulder, neck, lower back,[5] and head.  (Cintron Tr. 10/11/11 35:20–21.)  A May 26, 2009 MRI indicated a herniated disc at C6-C7, bulge of the disc at C3-C4, C4-C5 and C5-C6.  (Certified Records of Peter Wohl, Ex. P to Defendant's Exhibits ("Gov't Ex. P") at 3.)  A September 16, 2009 MRI showed a herniated disc at C6-C7, together with degenerative, arthritic findings at the C5-C6 level.  (*See* Transcript of Dr. John Athas, October 11, 2011 25:11–13; 28:16–24; 35:1–19; 37:17–23.)  An October 26, 2009 report from Bergenline Healthcare noted that Plaintiff reported the following symptoms: headaches, difficulty sleeping, anxiety, tension, irritability, general weakness, neck pain, limited neck movement without eliciting pain, "radiation of pain to right and left trapezius regions," painful left shoulder, dorsal pain, and difficulty raising his left arm.  (Gov't Ex. P, at 1).  Dr. Peter Wohl at Bergenline Healthcare also opined that Plaintiff "suffered a permanent injury with reduction in the normal range of motion of the cervical and lumbar regions of the neuromusculoskeletal system" as a result of the March 21, 2009 accident.  (*Id.* at 5.)

---

[5] Plaintiff testified that his lower back no longer bothers him.  (Cintron Tr. 10/12/11 44:8–13.)

However, prior to March 21, 2009, Plaintiff suffered from an acute cervical sprain, as well as from left shoulder numbness, headaches, upper and lower back pain, hand numbness and difficulty sleeping.[6] (Gov't Ex. G, at 8, 31, 44.) Prior to the March 21, 2009 accident, Plaintiff had injuries from motor vehicle accidents and physical altercations, of which some injuries were considered to be permanent. (*See, e.g.*, Cintron Tr. 10/12/11 38:6-41:15.) Plaintiff was involved in a motor vehicle accident on March 31, 1993 and another accident involving a bus on December 2, 1994. (Gov't Ex. G, at 14, 24, 30, 48–49.) After the 1994 accident, Plaintiff was said to have headaches, abnormal curvature, cervical kyphosis, "cervico – brachial syndrome," and permanent post-traumatic muscle spasms in his neck and lower back, as well as permanent restriction of motion (cervical and lumbar). (*Id.* at 8-10.) Plaintiff was also injured when assailants assaulted him in 2005, and as a result, a Computed Tomography (CT) scan demonstrated swelling of the brain. (Cintron Tr. 10/11/11 7:6–12; *see also* Cintron Tr. 10/12/11 41:23–25, 42:1–25.) Notably, during an initial consultation with Dr. Solomon Halioua at Saddle Brook Pain Center on August 12, 2009, Plaintiff denied "any prior history of cervical or lumbosacral pain prior to the accident he sustained on 03/21/09." (Gov't Ex. P, at 21.)

While Plaintiff appeared generally credible at trial, the extent to which his pain and injuries are attributable to the March 21, 2009 accident is questionable given his prior medical history and the expert testimony provided. Expert testimony indicated that Plaintiff would be susceptible to herniation after the 1994 accident. Plaintiff then had additional incidents between 1994 and 2009. Defendant argued that at most, the 2009 accident exacerbated Plaintiff's prior

---

[6] *See Paxton v. Misiuk*, 170 A.2d 16, 21 (N.J. 1961) ("A plaintiff may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially, by an earlier accident or pre-existing condition.").

problems. For example, prior to the March 21, 2009 accident, and as late as March 5, 2009, Plaintiff complained about back pain. (Cintron Tr. 10/11/11 5:16–6:23.)

Plaintiff had pre-existing injuries at the time of the accident at issue. Plaintiff cannot recover for injuries he previously sustained and received recovery from that were not a result of the March 21, 2009 accident.

Plaintiff has requested compensation for past, present, and future pain and suffering, disability and loss of enjoyment of life as a result of his injuries. (Pl.'s Proposed Conclusions of Law ¶ 9.) Plaintiff presented evidence regarding his life expectancy, which this Court has considered. Plaintiff did not put forth much other evidence regarding damages.

Plaintiff is not entitled to recover for medical costs, the payment of which he is not responsible. *See Finderne Mgmt. Co., Inc. v. Barrett*, 955 A.2d 940, 960–61 (N.J. Super. Ct. App. Div. 2008); *Thomas v. Toys R Us, Inc.*, 660 A.2d 1236, 1244–46 (N.J. Super. Ct. App. Div. 1995). Pre-judgment interest and punitive damages are not permissible in this case, and Plaintiff is limited by the damages sought in his administrative complaint. 28 U.S.C. §§ 2674, 2675(b) (2006).

In light of the record before this Court, including the testimony provided during the bench trial, this Court will award Plaintiff $20,000 in damages, inclusive of attorneys' fees and costs.

*Defendant's 52(c) Motion*

During trial, Defendant made a Rule 52(c) motion and this Court reserved decision. For the reasons discussed above, this Court will find for Plaintiff. Therefore, Defendant's 52(c) motion is denied as moot.

**CONCLUSION**

For the reasons stated above, the Court will enter judgment in favor of Plaintiff. An appropriate Order and Judgment will accompany this opinion.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Judge Arleo
        Parties